UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHENITHIA COWELL, individually and on
behalf of all similarly situated individuals,

                       Plaintiff,

 -against-

UTOPIA HOME CARE, INC.,

                       Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
14-CV-736 (LDW)(SIL)

**LOCKE, Magistrate Judge:**

Plaintiff Shenithia Cowell ("Plaintiff" or "Cowell") commenced this action against Defendant Utopia Home Care, Inc. ("Defendant" or "Utopia"), on behalf of herself and all other similarly situated individuals, seeking to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq. See* Docket Entry ("DE") [1].  Presently before the Court, on referral from the Honorable Leonard D. Wexler, is Plaintiff's motion for an Order:  (i) conditionally certifying this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b); (ii) compelling Defendant to provide the names and relevant contact information for potential opt-in plaintiffs; (iii) authorizing dissemination of a proposed Notice and Consent to Sue form (the "Notice and Consent Form") to potential opt-in plaintiffs; and (iv) appointing Johnson Becker PLLC and Sommers Schwartz, P.C. as counsel for the putative class.  *See* DE [49].  Defendant opposes

conditional certification and certain aspects of the Notice and Consent Form.  *See* DE [50].  For the reasons set forth herein, Plaintiff's motion is denied.

## I.   BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Third Amended Complaint.

### A. <u>Relevant Facts</u>

Defendant is a New York corporation that provides "in-home personal care, management and/or treatment of a variety of conditions by nurses, therapists, social workers, home health aides, personal care aides, live-in aides and homemakers."  *See* Third Amended Class Action and Collective Action Complaint ("TAC"), DE [41], ¶ 12 (internal quotation omitted).  Utopia employs between 1,001 and 5,000 individuals, and provides "24 hours a day, 7 days a week care services" in its twenty-two locations across six states.  *Id*. at ¶¶ 2, 12.  Relevant for purposes of this action, Utopia employs, among other positions, Home Health Aides ("HHAs") and Personal Care Aides ("PCAs") to provide personal care and related services.  *Id*. at ¶ 15.  Although "PCAs receive somewhat less training than HHAs and are not qualified to do all of the tasks performed by an HHA," Defendant concedes that, "[f]or purposes of this motion, there is no meaningful distinction between the two."  *See* Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Court Authorized Notice ("Def.'s Opp'n"), DE [50], at 1 n.1.

Plaintiff worked as an HHA at Utopia from 2003 until January 2013, during which time she was paid an hourly rate between $9.00 and $13.12 per hour.  *See* TAC

Case 2:14-cv-00736-LDW-SIL   Document 57   Filed 08/08/16   Page 3 of 18 PageID #: 1172

¶¶ 10, 23.  Plaintiff alleges that, in her role as an HHA, she provided domestic services, including but not limited to:

> meal preparation and service; shopping for groceries and other items; washing clothes; errands outside of the home; shopping for supplies; medical and other appointments; personal hygiene care, dressing, and cleaning; and performing general household cleaning including mopping, vacuuming, and sweeping floors throughout the house; vacuuming the stairs and upstairs bathrooms, hallways, and common areas including those not utilized by Defendant's client; making beds; washing dishes; dusting the whole house; cleaning the kitchen, refrigerator, and oven; cleaning all bathrooms; cleaning the whole house; sorting and removing of trash; shoveling snow and helping with lawn care and gardens.

*Id.* at ¶ 17.

According to Plaintiff, she spent approximately one-third of her time performing general household cleaning duties. *Id.* More specifically, Cowell states that she "regularly worked over fifty (50) hours per week while employed by [Utopia] and performed general household work for more tha[n] 20 percent of her total weekly hours worked." *Id.* at ¶ 24. According to Plaintiff, Defendant improperly classified all HHAs and PCAs as exempt employees under the domestic companionship service employment exemption pursuant to 29 U.S.C. § 213(a)(15). *Id.* at ¶¶ 26-30. As a result, she was paid "her straight hourly rate for all hours worked and withheld wages at one-and-one-half times that hourly rate when she worked more than forty hours per week." *Id.* at ¶ 25.

Plaintiff further alleges that Utopia has an "established policy that all HHAs and PCAs report to work at least ten (10) minutes prior to the start of their shift." *Id.* at ¶ 20. As required, Cowell reported to work ten minutes prior to the start of her shift, but she claims that she was not compensated for that time. *Id.* at ¶ 21. Finally,

3

Plaintiff asserts that her payroll records "are devoid of the pre-shift work [she] was required to perform." *Id.* at ¶ 22.

**B. <u>Procedural History</u>**

By way of Complaint dated February 3, 2014, Plaintiff commenced this action on behalf of herself and all other similarly situated individuals, seeking to recover for Defendant's alleged violations of the FLSA and NYLL. *See* DE [1]. Cowell filed an Amended Complaint and Second Amended Complaint on June 13, 2014 and August 19, 2014, respectively, in which she added claims for breach of contract and violation of New York's Payment of Wages Act. *See* DE [18], [22]. Plaintiff asserts her claims arising under the FLSA as a putative collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and "[a]ll current and former [HHAs] and [PCAs] employed by Utopia Home Care, Inc. at any time during the last three years, who were required to report to work ten (10) minutes early and/or were not paid an overtime premium for hours worked over 40 in a workweek." TAC ¶ 35. Cowell brings her claims arising under the NYLL as a putative class action pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4) on behalf of herself and "[a]ll current and former [HHAs] and [PCAs] employed by Utopia Home Care, Inc. in New York at any time during the last six years, who were required to arrive to work ten (10) minutes early and/or who worked over 40 hours per week and were not paid an overtime premium for hours worked over 40 in a workweek." *Id.* at ¶ 42.

Plaintiff now seeks conditional certification of this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b) and permission to circulate the proposed Notice

and Consent Form "to all current and former Home Health Aides and Personal Care Aides employed by Utopia." *See* Plaintiffs' Memorandum of Law in Support of Motion for Conditional Certification and Court Authorized Notice ("Pl.'s Mem."), DE [49-3], at 1. According to Plaintiff, "the allegations in the [TAC]—coupled with the Named- and Opt-in Plaintiffs' declarations—establish that Utopia HHAs share similar job duties and responsibilities and were victims of the same policy, decision, and practice to deny them premium overtime pay." *Id.* at 8. Plaintiff further alleges that potential opt-in plaintiffs are similarly situated because:

> (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan . . .; (c) their claims are based upon the same factual and legal theories; and (d) the employment relationship between Defendant and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

TAC ¶ 37. Plaintiff estimates that the collective class, including both current and former employees, will include several thousand members. *Id.* at ¶ 38.

In opposition, Defendant argues, among other things, that "Plaintiff has not demonstrated . . . that all HHAs were 'similarly situated' because they were victims of a *common policy that violated the law*." *See* Def.'s Opp'n at 1 (emphasis in original). Rather, according to Defendant, a determination of whether HHAs were properly classified as exempt "requires consideration of a fact-intensive analysis of factors" that is "highly variable not only between different HHAs, or different patients, but between different shifts even with the same HHA." *Id.* at 2. Defendant also opposes certain aspects of the proposed Notice and Consent Form. *Id.* at 23-25. On July 26,

5

2016, the Court held a hearing on Plaintiff's motion for conditional certification.  *See* DE [56].

## II.   LEGAL STANDARD

The FLSA provides, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected . . . .  An action to recover the liability . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "[D]istrict courts 'have discretion, in appropriate cases, to implement [section 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 486 (1989)).

Pursuant to Section 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given work week.  29 U.S.C. § 207(a)(1).  However, "[t]he FLSA contains several express statutory exemptions from the overtime payment requirement." *Harper v. Gov't Emps. Ins. Co.*, 754 F. Supp. 2d 461, 463 (E.D.N.Y. 2010); *see also* 29 U.S.C. § 213(a) (establishing employees exempt from minimum wage and maximum hour requirements).  In order to be exempt from the FLSA's overtime pay requirements, "an employee's 'primary duty' must be the performance of exempt work."  29 C.F.R. § 541.700(a).  Whether an

employee is exempt "depends less on his title, and more on the actual duties performed." *Harper*, 754 F. Supp. 2d at 463.

Relevant for purposes of the instant motion, the FLSA's overtime pay provisions do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age of infirmity) are unable to care for themselves . . . ." 29 U.S.C. § 213(a)(15).  The FLSA's executing regulations (the "Regulations") further provide that:

> the term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.  They may also include the performance of general household work: *Provided, however,* that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6.[1]  Accordingly, courts distinguish between household work performed during the course of providing "fellowship, care, and, protection" for a patient and "general household work" unrelated to the provision of care.  *See Severin v. Project Ohr, Inc.*, No. 10 Civ. 9696, 2012 WL 2357410, at *5-6 (S.D.N.Y. June 20, 2012) ("[T]he applicability of the [companionship services] exemption to a particular home attendant is an individualized, fact-specific determination of whether . . . the home attendant performed general household work more than 20 percent of the time,

---

[1] Effective January 1, 2015, the definition of "companionship services" was amended.  *See* 29 C.F.R. § 552.6 (amended Jan. 1, 2015).  The Court relies on the definition of companionship services that was in effect for the duration of Plaintiff's employment.  *See also Cowell v. Utopia Home Care, Inc.*, 144 F. Supp. 3d 398, 402 (E.D.N.Y. 2015) (relying on definition of companionship services in effect prior to the January 1, 2015 amendment).

and of course any . . . household work that is related to the fellowship, care or protection of their client wouldn't negate the exemption."); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, No. 08-CV-3678, 2009 WL 1086935, at *3 (E.D.N.Y. Apr. 22, 2009) (observing that the Regulations expressly differentiate between "general household work," which is subject to the twenty percent limitation, and "household work related to the care of the aged or infirm person," which is not). To that end, in a March 16, 1995 Opinion Letter (the "Opinion Letter"), the United States Department of Labor ("DOL") Wage and Hour Division opined that "such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purposes of section 13(a)(15) of the FLSA." *See* U.S. Dep't of Labor, Opinion Letter, Fair Labor Standards Act (FLSA), 1995 WL 1032475, at *1 (Mar. 16, 1995). In contrast, the DOL opined that "activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be general household work or nonexempt work that is subject to the 20 percent time limitation." *Id.*

According to Cowell, because HHAs "spent more than 20% of their time doing non-exempt general household work, the 'Companionship Services' exemption does not apply and Utopia is required to pay Plaintiffs overtime wages for all hours worked over forty per week." Pl.'s Mem. at 3. Although Defendant does not dispute that Utopia classifies all HHAs as exempt employees pursuant to the companionship

services exemption, in opposing the instant motion for conditional certification, Defendant argues that Plaintiff "has no classwide proof to show that all HHAs—up to 5,000 across six states—were similarly situated" to Plaintiff in that the gravamen of their actual duties negated the application of the companionship services exemption. *See* Def.'s Opp'n at 1-2.

## III.   DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, Plaintiff's motion is denied.   Courts in the Second Circuit apply a two-step analysis in determining whether an action should be certified as an FLSA collective action. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010); *see also Mata v. Foodbridge LLC*, No. 14 Civ. 8754, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) ("[The certification] process entails analysis of whether prospective plaintiffs are 'similarly situated' at two different stages:  an early 'notice stage' and again after discovery is fundamentally complete.").   First, the court determines whether the proposed class members are "similarly situated."   *See Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008).   If the court determines that the proposed class members are similarly situated, they must consent in writing to be bound by the result, or "opt in."   *Id.*; *see also* 29 U.S.C. § 216(b) (requiring that opt-in plaintiffs consent in writing to become a party to a collective action).   The second step generally occurs following completion of discovery and requires examination of the evidentiary record to determine whether the opt-in plaintiffs are, in fact, similarly situated.   *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).   The

present motion concerns only the first step of the certification process—whether the proposed class members are similarly situated such that conditional certification should be granted.

At the conditional certification stage, "the evidentiary standard is lenient." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage."). Plaintiffs seeking conditional certification "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal quotation omitted). However, "certification is not automatic." *Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012); *see also Mata*, 2015 WL 3457293, at *2 ("Plaintiff's burden of proof is low, but 'it is not non-existent.'") (quoting *Sanchez v. JMP Ventures L.L.C.*, No. 13 Civ. 7264, 2014 WL 465542, at *10 (S.D.N.Y. Jan. 27, 2014)). Rather, a plaintiff seeking conditional certification must offer "actual evidence of a factual nexus" between himself and potential opt-in plaintiffs. *Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *see also Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required.") (internal quotation omitted); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249,

261 (S.D.N.Y. 1997) ("[P]laintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.").  To that end, "[c]ourts will certify broad classes where there is some showing that all members of the putative class performed the same duties, or that the employer had uniform company-wide employment practices." *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (internal citations omitted); *see also Barbato v. Knightsbridge Props.*, No. 14-CV-7043, 2015 WL 5884134, at *5 (E.D.N.Y. Oct. 8, 2015) (granting motion for conditional certification where all potential opt-in plaintiffs "were classified as exempt despite the nature of their responsibilities," performed identical tasks as the named plaintiffs, and never received overtime compensation).

The determination that potential opt-in plaintiffs are similarly situated is typically based on the pleadings, affidavits, and declarations submitted by the plaintiff.  *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) ("[C]ourts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits.").  However, the required "modest factual showing" necessary for conditional certification "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555 (internal quotation omitted).

Here, Plaintiff has failed to satisfy her burden in demonstrating a "factual nexus" between herself and the proposed class of potential opt-in plaintiffs.  According

11

to Cowell, Utopia HHAs are similarly situated:  (i) with respect to their primary job duties because they spend "more than 20% of their time completing general housing duties," including "cleaning the kitchen and ovens; sweeping, mopping, and cleaning the floors; sorting and emptying trash; cleaning the entire house; dusting; etc."; and (ii) because "Utopia instituted and enforced a policy that all HHAs would be paid straight time even if they spent more than 20% of their time completing general household duties."  *See* Pl.'s Mem. at 8-9.  To that end, in support of the instant motion, Plaintiff submitted substantially similar declarations from herself and two Florida-based HHAs.  *See* Declaration of Shenithia Cowell ("Cowell Decl."), DE [49-6]; *see also* Declaration of Jeri Aronowitz ("Aronowitz Decl."), DE [49-5]; Declaration of Tina Hall ("Hall Decl."), DE [49-7].  Like Plaintiff, Jeri Aronowitz and Tina Hall both claim that they "regularly worked more than forty (40) hours per week in the homes of Utopia's clients," but that they were "not paid overtime compensation at a rate of one-and-one-half times [their] hourly rate[s]."  *See* Aronowitz Decl. ¶¶ 5, 7; Hall Decl. ¶¶ 5, 7.  Moreover, Aronowitz and Hall claim that they "spent approximately twenty-five (25) percent of [their] time performing general household cleaning duties."  *See* Aronowitz Decl. ¶ 6; Hall Decl. ¶ 6.  Plaintiff, Aronowitz, and Hall each claim that, based on their "personal interactions with other home health aides employed by Utopia, [they are] informed and believe that all home health aides, regardless of location, performed the same primary job duties and were subject to the same policies and procedures."  *See* Aronowitz Decl. ¶ 9; Cowell Decl. ¶ 9; Hall Decl. ¶ 9. Likewise, Plaintiff, Aronowitz, and Hall each claim that, based on their "personal

experience of working for Utopia as a home health aide, [they are] informed and believe that the pay plan in place at any given time applied equally to all home health aides, regardless of their location, and that no home health aide received overtime pay when they worked over 40 hours in a workweek."  Aronowitz Decl. ¶ 10; Cowell Decl. ¶ 10; Hall Decl. ¶ 10.  According to Cowell, "[t]he pleadings, affidavits, and declarations in the instant litigation establish the similarity among the HHAs employed by Utopia for purposes of first stage notice."  Pl.'s Mem. at 7.

Even accepting as true that all Utopia HHAs perform substantially similar tasks, Plaintiff has failed to establish that, given the specific needs of the individual patient or patients to whom the HHAs are assigned, their duties constituted "general household work" such that they would "negate the [companionship services] exemption" as opposed to work "related to the fellowship, care or protection of their client."  *Severin*, 2012 WL 2357410, at *3.  According to Utopia, and Plaintiff submits no evidence to the contrary, because the care that its HHAs provide "is tailored to each patient's unique and individual needs," the determination of "whether Plaintiff was exempt requires consideration of a fact-intensive analysis of factors such as what tasks she performed, for how long, and how it related, or did not relate, to the individual and unique medical needs of her patient."  Def.'s Opp'n at 2-3.  To that end, Defendant prepares a unique "Plan of Care" for each client describing "the client's condition and any significant health issues and details the level of care the HHA must provide to ensure that the patient receives essential personal care and is provided a clean, safe, and healthy living environment."  *Id.* at 4.  According to Utopia,

13

"[e]very item on the Plaintiff's (and, for that matter, any other patient's) Plan of Care, *by definition*, is directly related to the care of the assigned patient," and that "[s]ince no two clients are the exactly [*sic*] same, no two client plans of care are exactly the same." *Id.* (emphasis in original). Moreover, Utopia argues that, "HHAs are *never* instructed or permitted by Utopia to perform tasks not included in the patient's Plan of Care, such as 'heavy cleaning' of the residence or services unrelated to the care of the patient." *Id.* at 5 (emphasis in original). Based on the foregoing, Defendant claims that "it is self-evident this is not an 'appropriate case' for certification because it will require a highly-individualized inquiry into the tasks performed *each* week by *each* HHA." *Id.* at 19 (emphasis in original).

The Court considers Judge Cote's reasoning in *Severin* to be instructive.[2] *See* 2012 WL 2357410, at *3. Similar to the Plans of Care created for Utopia's patients, in *Severin*, each patient of the home health care provider had a personally tailored "Client Care Plain," which provided "guidance for home attendants assisting the client, including setting forth the tasks the home attendants are expected to perform for the client." *Id.* at *1. In denying the plaintiffs' motion for conditional certification, Judge Cote observed that "[t]he kinds of jobs that the companions hold are individualized" and that "[t]hey each have separate patients or clients; they have to tailor their duties indeed their hours—everything to the needs of the individual client

---

[2] The *Severin* Opinion and Order denied the plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23, and not conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). 2012 WL 2357410, at *1. However, Judge Cote had previously denied the plaintiffs' motion for conditional certification in an unpublished oral opinion, and the relevant language is quoted in the Opinion and Order cited herein. *Id.*; *see also* Transcript of Oral Argument at 6:1-7:2, *Severin v. Project Ohr, Inc.*, No 10 Civ. 9696 (S.D.N.Y. filed Jan. 11, 2012) (No. 55) (transcript of oral opinion denying motion for conditional certification).

. . . ." *Id.* at *3.  Similarly, here, Utopia's HHAs' duties are specifically defined by, and limited to, the care items identified in each individual patient's Plan of Care, which depend on "many factors, including, among other things:  (i) the patient's condition and needs; (ii) the number of authorized hours; (iii) the size, characteristics and condition of the patient's residence; and (iv) whether the patient lives with family members or others."  *See* Def.'s Opp'n at 3-4.  Therefore, consistent with Judge Cote's reasoning in *Severin*, the Court concludes that the unique and individualized Plans of Care that are prepared for Utopia patients, and which Utopia HHAs are required to follow, result in "very fact-specific inquiries" that are not "susceptible . . . to a similarly-situated person analysis that would support the issuance of a collective action notice."  2012 WL 2357410, at *3; *see also Terwilliger v. Home of Home, Inc.*, 42 F. Supp. 2d 1231, 1254 (N.D. Okla. 1999) (holding that a task that is necessary for the care of the client cannot be "general household" work unrelated to the client, and therefore does not count toward the twenty percent exception).

In reaching this conclusion, the Court notes that granting Plaintiff's motion would fail to promote judicial efficiency, one of the underlying policies of the collective action mechanism.  *See Lynch*, 491 F. Supp. 2d at 367 ("The collective action procedure allows for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.").  A class of up to five thousand HHAs and PCAs across six states, *see* Def.'s Mem. at 2, would leave the Court having to conduct thousands of mini-trials to resolve the nature of

each Plan of Care, the reason for each task assigned in each Plan of Care in order to determine whether it counts for the purpose of the twenty percent calculation, how much time was regularly spent on each task, and then the total amount of time spent on all tasks in order to determine whether each class member is ultimately exempt. Such an outcome is exactly what the collective action mechanism was designed to avoid.

Relying on *Harper v. Gov't Emps. Ins. Co.*, No. 09-CV-2254, 2011 WL 10548148, at *1 (E.D.N.Y. June 14, 2011) (Report and Recommendation), *aff'd by* 826 F. Supp. 2d 454 (E.D.N.Y. 2011), Plaintiff argues, among other things, that Utopia HHAs are similarly situated because they "perform the same essential duties and are all considered as exempt."[3]  *See* Pl.'s Mem. at 10.  However, unlike here, where Utopia classified all HHAs as exempt pursuant to the companionship services exemption, in *Harper*, the court analyzed the applicability of the administrative exemption pursuant to 29 U.S.C. § 213(a)(1).  *See* 2011 WL 10548148, at *2.  Because of the "very fact-specific inquiries" involved in determining the applicability of the companionship services exemption, *see Severin,* 2012 WL 2357410, at *3, *Harper* does not support the conclusion that Plaintiff is similarly situated to all Utopia HHAs such that conditional certification would promote judicial efficiency.  *See also Hoffman–*

---

[3] Plaintiff also argues that "*Lawrence v. Maxim Healthcare Servs., Inc.*, No. 1:12-cv-2600, 2013 WL 5566668 (N.D. Ohio Oct. 9, 2013) is highly persuasive."  *See* Plaintiffs' Reply Memorandum of Law in Support of Motion for Conditional Certification and Court Authorized Notice, DE [49-19], at 5. Although *Lawrence* addresses the companionship services exemption, it is neither binding on this Court nor contemplates whether judicial efficiency is served in light of the defendant's argument that the "[p]laintiff and those similarly situated require highly individualized inquiry not suitable for a collective action."  2013 WL 5566668, at *1.  Therefore, the Court declines to follow the reasoning in *Lawrence.*

*LaRoche Inc.*, 493 U.S. at 170, 110 S. Ct. at 486 (observing that "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact").

Based on the foregoing, Cowell has failed to satisfy her burden in demonstrating a factual nexus between herself and other potential opt-in plaintiffs such that conditional certification pursuant to 29 U.S.C. § 216(b) is appropriate. Therefore, Plaintiff's motion for conditional certification as a collective action is denied.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff's motion is denied.  Discovery will proceed on Plaintiff's claims asserted on behalf of herself on an expedited basis as follows:

- Deadline to exchange Rule 26 disclosures and initial discovery demands:  August 22, 2016;

- Deadline to respond to initial discovery demands:  September 23, 2016;

- Deadline to complete all depositions:  November 23, 2016;

- Deadline to complete discovery:  December 7, 2016;

- Deadline to commence summary judgment motion practice consistent with Judge Wexler's individual rules of practice:  December 14, 2016.

Should the parties believe that expert discovery is necessary, they are instructed to submit a letter to the Court explaining the need for such discovery.  A final pretrial conference has been set for December 28, 2016 at 10:00 a.m. in courtroom 820 of the Central Islip courthouse.  A joint proposed pretrial order must be electronically submitted prior to the pretrial conference.

Dated: Central Islip, New York
      August 8, 2016

**SO ORDERED**

 s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge